S. Samuel Di Falco, S.
In this. construction proceeding the court has been asked to determine the meaning and effect of two clauses of the testator’s will and for instructions as to the disposition of proceeds resulting from the sale of real property allegedly owned by the decedent in Vienna, Austria.
In the third paragraph of his will the testator stated 1 ‘ I give and bequeath all of my personal effects such as jewelry, books, furnishings, objects of art and the like to my son; Charles Emmerich Kalman, * * #.” It is the contention of the decedent’s son that under this clause he is entitled to receive approximately 30 original manuscripts containing the musical scores of operettas written by the decedent. The decedent was a famous European composer and these manuscripts, together with the copyrights and royalty rights owned by the decedent in connection with the said manuscripts, constitute an important asset of his estate which were valued in excess of $70,000 for estate tax purposes.
The term personal effects in and of itself has no precise meaning. The meaning to be attached to such term is determined by the context within which it is found. It has at times been interpreted as an all-embracing term and has at other times been interpreted as very restricted in scope (Matter of Maurer, 192 Misc. 627; Matter of Michaelson, 194 Misc. 525; Matter of Ruth, 206 Misc. 423; Matter of Tyler, 207 Misc. 569). In the case at bar, the court could by application of the rule of ejusdem generis restrict the property to which the decedent’s son became entitled to only property of the kind and nature limited and described by the words following “ personal effects ” (Matter of Thompson, 218 App. Div. 130, affd. 245 N. Y. 565). However, the application of rules of construction are unnecessary when the intent of the testator can be discerned by a reading of the will.
In the fourth paragraph of his will the testator gives and bequeaths any manuscript that his son Charles should select to the National Library in Washington, D. C. In paragraphs eleventh and twelfth of his will the testator directed and restricted his trustees and children with respect to the administration and sale of his copyrights and author’s rights in the very manuscripts which the son now claims were bequeathed to him under paragraph third. It is obvious to the court that the testator contemplated the handling of these manuscripts as part of his trust estate and their eventual ownership by his *848 three children when the trusts had terminated. The son’s contention thajt the manuscripts were bequeathed to him under paragraph third of the will must, therefore, be rejected.
The next question which was posed as a question of construction is actually a request for instructions as to the disposition of the funds resulting from the sale of property owned by Regis A.GL, a Swiss corporation which had as its sole asset the decedent’s former residence in Vienna, Austria. The matter is submitted as though the law of this jurisdiction is applicable. As no proof has been submitted as to the Austrian law, the court will" assume that the law of this jurisdiction is the same as the Austrian law. The widow of the decedent claims that this asset was actually owned by the decedent; that the corporation was a fictional entity and that by operation of Austrian law the said residence was inherited by the widow and her children. The decedent at the time of his death owned 100% of the stock of Regis A.Q-. and the sale of the property was effected by the sale and transfer of the stock to the purchaser. Although this court has used its equity powers to pierce the corporate veil to effectuate the testator’s intent (Matter of Winburn, 136 Misc. 19) it will not use such power to frustrate and defeat the testator’s intent. By the residuary clause of his will the testator bequeathed to his trustees in trust for his wife and children his residuary estate ‘1 both real and personal, and wheresoever situated, both here and abroad, * *
No sound equitable reason has been projected which would justify the court’s ignoring of the corporate entity. The corporation owned the property at the time of the testator’s death and ownership of the stock of the corporation passed to the trustees pursuant to the terms of decedent’s will. The proceeds resulting from the sale of the stock should, therefore, be held and administered by the trustees as trust property (Palmer v. Ring, 113 App. Div. 643).
The requested construction sought by the trustees with reference to paragraph tenth of the testator’s will is somewhat puzzling to the court. In such paragraph the testator states “* * * my trustees shall have all of the powers and authority which are now or may hereafter be conferred by law upon trustees * * Later on in the same paragraph, after providing for the retention by his trustees of any securities transferred to them as trustees whether or not said securities are of a character authorized by the State of New York, the testator gives to his trustees discretion ‘1 to invest at any time and from time to time in such high grade investment securities, including stocks and bonds, as they shall deem advisable, *849 whether or not such securities be of the character authorized by the law of the State of New York for the investment of trust funds; * * The question propounded by the trustees is whether, and the court quotes from the petition: “ all securities purchased must be ‘ high grade investment securities ’ or whether the trustees are authorized to invest up to 35% of the aggregate market value of the trust fund as permitted by subdivision m of section 21 of the Personal Property Law even though such securities might not be deemed ‘ high grade investment securities ’ and only the remaining 65% of the fund must be invested in ‘ high grade investment securities ’.”
By inference it would appear that the trustees believe that subdivision m of section 21 of the Personal Property Law gives them the right to invest trust funds in any listed security regardless of its speculative nature. Section 21 of the Personal Property Law was enacted to control and guide fiduciaries in the investment of trust funds. Due to our ever-expanding and growing economy, it has been added to over the years, so as to broaden the scope of investments permitted for fiduciaries. However, at no time and by none of the amendments to this section, did the Legislature intend to give fiduciaries a license to speculate with trust funds. The opening paragraph of section 21 sets forth the rule of thumb to be followed by all fiduciaries in making investments permitted under the various subdivisions of the section and provides an excellent definition of the term “ high grade investment securities ”. The paragraph states that fiduciaries may invest in the kinds and classes of securities described in the subdivisions of the section provided “that investment is made only in such securities as would be acquired by prudent men of discretion and intelligence in such matters who are seeking a reasonable income and the preservation of their capital.”
In the case at bar the testator has chosen to give his trustees powers of investment broader in scope than those permitted by section 21 which allows them to invest a greater proportion of the trust funds in listed securities than is permitted under subdivision m of section 21 of the Personal Property Law. However, by reason of the testator’s injunction that the investments be made in “ high grade investment securities ”, the court cautions the trustees to adhere to the rule of prudence set forth in the opening paragraph of section 21 of the Personal Property Law.
Submit decree on notice construing the will accordingly.